Per Curiam.

In this, as in every mandamus action, the fundamental question which must be resolved is whether a clear legal duty rests upon respondent to perform the act demanded.
Where unclaimed deposits of a liquidated building and loan company have been transferred, due to the lapse of time and pursuant to statute, from the treasurer’s special trust fund for such deposits into the General Revenue Fund, does any duty exist upon the treasurer which would require him to pay the amount of such deposit to the listed owner thereof upon demand?
Section 113.06, Revised Code, provides:
“No money shall be paid out of the state treasury or transferred from it to a county treasury or elsewhere except on warrant of the Auditor of State. * * * ”
The treasurer is primarily a custodian of funds and may not disburse such funds except by order of the proper official upon warrant of the auditor. It is clear that the treasurer cannot disburse such funds solely on his own initiative.
The deposits in the instant case were subject to the provisions of Section 687-17, General Code, and successor Section 1157.20, Revised Code. Section 1157.20, Revised Code, provides in part as follows:
“Dividends and unclaimed deposits of a domestic building and loan association, the assets of which have been liquidated under Sections 1157.01 to 1157.29, inclusive, of the Revised Code, which remain in the hands of the Superintendent of Building and Loan Associations for six months after the order for final distribution, shall be deposited by him with the Treasurer of State, who shall hold such funds as custodian, subject to the *169 order of the superintendent without the necessity of appropriation by the General Assembly. The superintendent shall pay over the moneys so held by the Treasurer of State to the persons respectively entitled thereto, upon being furnished satisfactory evidence of their right to such moneys.”
Thus, the funds in controversy in the present case in the first instance were held in a special fund subject to the order of the superintendent and required no prior appropriation by the General Assembly.
However, Section 1157.20, Revised Code, also provides:
“In case of doubt or conflicting claims, the superintendent may apply to the Court of Common Pleas of the county in which the liquidation proceedings were had for an order authorizing and directing the payment of such moneys. All unclaimed deposits and dividends for which no demand has been made within five years after the order of final distribution shall be paid into the state treasury upon the order of the Auditor of State. ’ ’
Once such funds, pursuant to the above provision, were transferred from the special trust fund known as the “regular fund” into the General Revenue Fund, they became a part thereof and were no longer subject to the order of the superintendent but could be expended only as provided by law.
Section 22, Article II of the Ohio Constitution, reads as follows:
“No money shall be drawn from the treasury, except in pursuance of a specific appropriation, made by law; and no appropriation shall be made for a longer period than two years.”
It is the duty of the auditor before he issues a warrant to determine the existence of a prior appropriation.
Section 115.35, Revised Code, reads in part as follows:
< < * * * He [Auditor of State] shall draw no warrant on the Treasurer of State for any claim unless he finds it legal and that there is money in the treasury which has been appropriated to pay it.”
Thus, once such funds became a part of the General Revenue Fund they could be expended only as provided by law. The basis of expenditures from the General Revenue Fund is prior *170 appropriation without which the auditor cannot draw a warrant on state funds.
The second paragraph of the syllabus of Grandle v. Rhodes, Aud., 169 Ohio St., 77, states:
“Under the provisions of Sections 22 and 29, Article II of the Constitution of Ohio, before money may be taken from the state treasury specific authorization therefor must be by action of the General Assembly in the manner prescribed, and, where it appears that there has been no authorization by the General Assembly for the withdrawal of funds, the doors of the state treasury must remain closed to those seeking attorney fees for services rendered in a taxpayer’s successful action to prevent the expenditure of public funds.”
When the deposit in question became a part of the General Revenue Fund it lost its classified status as part of the “regular account” subject to the order of the superintendent and could be withdrawn from the General Revenue Fund only by a proper warrant issued by the auditor based upon an appropriation therefor. Absent such appropriation, the auditor had no authority to issue a warrant for this deposit, and without such warrant the treasurer not only has no duty but he has no authority to pay out this money.
Therefore, the writ of mandamus is denied.

Writ denied.

Taet, O. J., Zimmerman, Matthias, O’Neill, Grieeith, Herbert and Gibson, JJ., concur.